# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL ANTONIO GONZALEZ, | Case No. 1:15-cv-01098-DAD-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED BECAUSE PLAINTIFF EXHAUSTED HIS AVAILABLE ADMINISTRATIVE REMEDIES |
| v. | |
| J. RAZO, et al., | |
| Defendants. | (ECF NO. 58) |
| | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I. BACKGROUND

Manuel Gonzalez ("Plaintiff") is a state prisoner. On July 16, 2015, Plaintiff filed the complaint commencing this 42 U.S.C. § 1983 civil rights action. (ECF No. 1).

This action now proceeds with Plaintiff's original complaint, on Plaintiff's claims for: unconstitutional excessive force against defendants Correctional Officer Razo and Correctional Officer Johnson; failure to protect against defendant Correctional Officer Blankenship; deliberate indifference to serious medical needs against defendant Sergeant Ybarra; retaliation in violation of the First Amendment against defendant Ybarra; assault and battery against defendants Razo and Johnson; and negligence against defendant Blankenship. (ECF Nos. 1, 31, 36, 37, 54, 63 & 85).

On May 30, 2017, defendants Johnson, Blankenship, and Ybarra ("Defendants") filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies as to the claims against Defendants before filing this action. (ECF No. 58). On July 13 and 14 of 2017, Plaintiff filed his opposition to the motion. (ECF Nos. 76-79). On July 19, 2017, Defendants filed their reply. (ECF No. 81).

On July 27, 2017, the Court held a hearing on the motion. After the hearing, the Court issued an order that, among other things, allowed both sides to submit additional evidence and

1

a supplemental brief.  (ECF No. 84).

On August 17, 2017, Defendants filed their additional evidence and supplemental brief. (ECF No. 86).  On that same day, Plaintiff filed his additional evidence and supplemental brief. (ECF No. 87).

After consideration of all the materials presented, as well as the applicable law, the Court will recommend denying the motion for summary judgment because Plaintiff exhausted his available administrative remedies as to all claims against Defendants.

## II.    LEGAL STANDARDS

### A.    Exhaustion

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  California law also requires a prisoner to "exhaust available administrative remedies before seeking judicial relief."  Wright v. State, 122 Cal. App. 4th 659, 664 (2004).  Accord Gilliam v. California, Dep't of Corr. & Rehab., No. 2:07CV-01987GEBJKM, 2008 WL 114977, at *2 (E.D. Cal. 2008).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).   Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (June 6, 2016).  The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002).  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

However, "a prisoner exhausts 'such administrative remedies as are available,' 42

2

U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore [a] procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." <u>Reyes v. Smith</u>, 810 F.3d 654, 658 (9th Cir. 2016).

"Under the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.' <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir.2010) (quoting <u>Griffin</u>, 557 F.3d at 1120). The grievance 'need not include legal terminology or legal theories,' because '[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.' <u>Griffin</u>, 557 F.3d at 1120. The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.' <u>Jones</u>, 549 U.S. at 219, 127 S.Ct. 910 (citations omitted)." <u>Reyes</u>, 810 F.3d at 659.

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." <u>Albino v. Baca</u> ("Albino II"), 747 F.3d 1162, 1172 (9th Cir. 2014) (*en banc*). If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." <u>Id.</u> However, "the ultimate burden of proof remains with the defendant." <u>Id.</u> "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." <u>Id.</u> at 1166

The Ninth Circuit has provided guidance regarding the proper procedural device for raising the affirmative defense of exhaustion under section 1997e(a). <u>Id.</u> at 1168–69. Following the decision in <u>Albino II</u>, defendants may raise non-exhaustion as an affirmative defense under section 1997e(a) in either a motion to dismiss pursuant to Rule 12(b)(6) or a motion for summary judgment under Rule 56. <u>Id.</u>

If the Court concludes that Plaintiff has failed to exhaust as to some claims but not others, the proper remedy is dismissal of the claims barred by section 1997e(a). <u>Jones</u>, 549

U.S. at 223–24.

**B.**   **Summary Judgment**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Albino II</u>, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted"). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the court must determine "whether a fair-minded jury could reasonably find for the [non-moving party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989), citing <u>Angel v. Seattle-First Nat'l Bank</u>, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing a summary judgment motion, the Court may consider other materials in

4

the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2.

## III. PLAINTIFF'S COMPLAINT

### A. Summary of Facts in Complaint Related to Remaining Cognizable Claims

Plaintiff alleges that on March 18, 2014, he was brutally assaulted by defendant Correctional Officer Razo while incarcerated at California Correctional Institution, Tehachapi, CA ("CCI"). Plaintiff's right rib cage was dislocated. Plaintiff was unable to breathe without feeling pain. Plaintiff's right side cheek bone was fractured and his right side eyebrow received a one and a half inch laceration requiring stitches. Plaintiff's right eye vision was damaged. Plaintiff's right hearing was damaged (Plaintiff requires a hearing aid). The right side of Plaintiff's face (near his temple) was paralyzed due to nerve damage. Plaintiff suffered from a concussion due to the serious head injury. Plaintiff only received stiches for the laceration, and antibiotics. Plaintiff's request to see a specialist regarding his head injuries was denied.

The event took place after Plaintiff was escorted in handcuff restraints to speak with a potential "cellee" (cellmate). After speaking to the potential cellee, they both agreed they were not compatible. Plaintiff explained to defendant Razo that he was not compatible with the proposed cellee.

Defendant Razo became very angry, agitated and frustrated. Defendant Razo forcefully threw Plaintiff to the ground. Defendant Razo looked at the Tower 5 Officer and yelled "'[h]it the alarm!'" Defendant Razo then began kneeing Plaintiff in the right rib cage area. Defendant Razo then grabbed the back of Plaintiff's head and began repeatedly slamming Plaintiff's face

5

on the right side on the concrete ground, resulting in a crushed skull, right side cheek bone fracture, right side eyebrow laceration over one and a half inches, and vision damage to Plaintiff's right eye. At the end of the assault, defendant Razo yelled to the other correctional officers, "'[d]id anyone see?!'"

Defendant Correctional Officer Johnson of 4A, Building 6, admitted on an incident report to holding Plaintiff down and applying illegal excessive force while defendant Razo assaulted Plaintiff. Plaintiff was prone out on the ground and was in handcuff restraints when the assault occurred.

Defendant Correctional Officer Blankenship of Facility 4A admitted in an incident report that he was present yet made no effort to stop the assault from taking place. Defendant Blankenship could have prevented multiple serious injuries by intervening

Plaintiff did not receive adequate medical attention. Plaintiff only received stitches for the laceration and antibiotics. X-rays were ordered several weeks later.

M.D. Vu realized the seriousness of Plaintiff's injuries and understood that they required hospitalization, but nevertheless declined to send Plaintiff to a hospital based on directions from defendant Sergeant Ybarra and prison staff pressuring him not to do so in order to "cover up" the incident. For the next several weeks, Plaintiff consulted with Vu and requested hospitalization and consultation with various specialists. These requests were denied.

R.N. Rice deliberately refused to document Plaintiff's injuries and report the seriousness of the injuries to Vu and the supervisor. Rice also falsified form 7219 (the Medical Report of Injury or Unusual Occurrence Form) regarding Plaintiff's explanation of the assault. Defendant Ybarra told R.N. Rice not to document Plaintiff's statement. R.N. Rice also deliberately destroyed the original form 7219 to try to cover up the incident. R.N. Rice also deliberately failed to provide adequate medical care by failing to notify his supervisor of Plaintiff's immediate need of hospitalization.

Plaintiff was threatened constantly not to come forward with the incident or things would get worse. Plaintiff believes that defendant Razo was working on orders due to previous

grievances Plaintiff filed in the past.

Defendant Ybarra told medical staff not to document injuries or send Plaintiff to the hospital for his serious injuries in order to cover up the incident of assault. Defendant Ybarra also informed all prison staff to retaliate against Plaintiff for coming forward with a grievance for the assault.

### B.     Cognizable Claims

Based on the allegations in Plaintiff's complaint, the Court found a cognizable claim for unconstitutional excessive force against Razo and Johnson based on allegations that they used deadly force in an assault against Plaintiff (ECF No. 31, p. 7); a cognizable claim for failure to protect against defendant Blankenship based on allegations that defendant Blankenship admitted on an incident report that he was present, yet made no effort to stop the assault, combined with the allegation that defendant Blankenship could have prevented the injuries (id. at 7-8); a cognizable claim for deliberate indifference to serious medical against defendant Ybarra based on the allegation that, in order to cover up the assault, defendant Ybarra told medical staff not to document Plaintiff's injuries or send Plaintiff to a hospital for treatment of his injuries (id. at 9-10); and a cognizable First Amendment retaliation claim against defendant Ybarra based on the allegation that defendant Ybarra told all prison staff to retaliate against Plaintiff for filing a grievance related to the assault (id. at 10).

Because the Court found cognizable federal claims, the Court decided to "exercise supplemental jurisdiction over Plaintiff's state law claims that form part of the same case or controversy as Plaintiff's cognizable federal claims, namely the state law claims against defendants Razo, Johnson, Blankenship, [] and Ybarra. Accordingly, the Court will exercise supplemental jurisdiction over the assault and battery claim as to defendants Razo and Johnson, [and] over the negligence claim as to defendant Blankenship...." (Id. at 12).[1]

///

---

[1] R.N. Rice was dismissed from this action "due to plaintiff's failure to provide the Marshal with accurate and sufficient information to effect service of the summons and complaint on defendant R.N. Rice within the time period prescribed by Federal Rule of Civil Procedure 4(m)." (ECF No. 85).

## IV.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The parties contest whether, under applicable law, those appeals exhausted the claims against Defendants Johnson, Blankenship, and Ybarra.  (Defendant Razo, who is alleged to be the primary aggressor in the assault, has not challenged exhaustion.  Defendant Rice has been dismissed without prejudice for a failure to serve him.)  The material facts are not disputed.[2] There are two potentially relevant appeals that received decisions from the final level of review.[3]  Defendants argue that these appeals are insufficient to exhaust the claims against Defendants Johnson, Blankenship, and Ybarra.  (ECF No. 58, pgs. 12-13).  Plaintiff argues that these appeals are sufficient to exhaust the claims against them.  (ECF No. 76 p. 3; ECF No. 87, p. 4).

### A.    Inmate Appeal (Log # 14-00637)

On Plaintiff's inmate appeal, in the section for Plaintiff to briefly state the subject of his appeal, Plaintiff wrote "[s]taff misconduct by Correctional Officer Razo, excessive force, assault by building officer 4A-6 building[.]"  (ECF No. 58-5, p. 4.).   In the section for explaining his issue, Plaintiff wrote:

> On March 18, 2014, I was escorted by Correctional Officer Razo, 4A-Building 6 officer, to speak with potential cellee at building 5.  I spoke to the preson and was not compatible.  I explained… to Correctional Officer Razo we were not compatible.  Razo became very angry and frustrated; as "Razo" was escorting me handcuffed outside five building, Razo then forcefully threw me to the ground for no apparent reason; Razo then yelled at building five tower officer "hit the alarm!"  Razo then began kneeing me forcefully on right side rib cage[.]  My right side rib cage is currently dislocated and may be broken; I tried to cover my right rib with arm, and Razo then grabbed my head and began striking my right side face and skull repeatedly to the concrete ground until excessive bleeding shown.  I was drenched in blood, right

---

[2] Plaintiff also alleges that he submitted additional appeals against Defendants, but that those appeals were never processed.  (ECF No. 87-1, p.10).  Defendants dispute this.  Plaintiff's allegation could give rise to a dispute of material fact that would require an evidentiary hearing to resolve.  However, because the Court is finding that, based on the undisputed facts regarding appeals that were indisputably submitted, Plaintiff exhausted his available administrative remedies as to all claims against Defendants, this potential dispute of fact is not material.  If the assigned district judge does not adopt these findings and recommendations in full, this potential dispute of fact could become material, and this Court would recommend setting an evidentiary hearing.

[3] "Administrative exhaustion within California requires the completion of the third level of administrative review."  Jackson v. Fong, No. 15-15547, 2017 WL 3758338, at *3 (9th Cir. Aug. 31, 2017).

side eyebrow with over one inch scar laceration requiring stiches, and right side cheekbone fractured, right side vision damage in result of Razo's actions. When Razo was done with his criminal assault he kept yelling, "did anyone see?!" repeatedly. Correctional Officer Razo's actions of illegal excessive force was staff misconduct and criminal assault[.]"

(Id. at 4 & 6).

In his action request, among other things, Plaintiff requested that "all facility staff counseled on []retaliation being considered 'staff misconduct'" because Plaintiff felt he was being subjected to retaliation. (Id. at 6).

This appeal was denied at the third level of review. (Id. at 10).

### B. Health Care Appeal (Log # 14036162)

On Plaintiff's health care appeal (which was not provided by Defendants in their motion for summary judgment, who represented that the appeal was unrelated to the incident in question),[4] in the section for explaining his "issue," Plaintiff wrote:

---

[4] In the declaration of R. Robinson, which was submitted in support of Defendants' motion, this health care appeal was listed only by its appeal number (which was in fact incorrect), followed by the statement "[n]one of these appeals concern an incident on March 18, 2014, in which custody staff allegedly used excessive force, failed-to-protect, were deliberately indifferent to, or retaliated against inmate Gonzalez." (ECF No. 58-6, p. 3). As is clear from the text of the appeal quoted later in this order, Robinson's statement was incorrect. This appeal clearly describes the March 18, 2014 incident, as well as the aftermath. Moreover, one of the claims on which Defendants moved for summary judgment relates to the aftermath of the incident and denial of medical care, so health care is squarely relevant to Defendants' motion.

The Court received the full appeal only through Plaintiff's own filing in response to Defendants' motion. The Court confronted Defendants with the disparity between Defendants' representation and the text of the appeal at the hearing on the motion for summary judgment. The Court allowed Defendants to file a supplemental brief addressing this appeal in light of Plaintiff's submission.

The Court expected Defendants to explain that Robinson's statement was inadvertent and in error. Instead, Defendants continued to insist that Robinson's declaration was correct and that Defendants were right to represent to the Court that the appeal was unrelated to the litigation and to omit the appeal in their presentation to the Court asking for summary judgment on Plaintiff's claims. In their supplemental brief, Defendants insisted that "[a]lthough [Plaintiff] referred to the March 18 incident in health-care appeal 14036162, his appeal concerned only health-care-related issues that arose after the March 18 incident—namely, that he was not being provided with adequate treatment. Thus, from the viewpoint of the Health Care Correspondence and Appeals Branch, health-care appeal 14036162 did not concern the incident of March 18." (ECF No. 86, pgs. 9-10). Besides the fact that the exact incident is in fact described in this appeal, Defendants moved for summary judgment on Plaintiff's claim for deliberate indifference to Plaintiff's serious medical needs against defendant Ybarra stemming from Plaintiff allegedly being denied medical care after the incident.

Defendants also justified their decision by claiming that to the extent the appeal did relate to the incident in question, it was filed more than 30 days after the incident so could not have exhausted claims related to that incident. But the argument regarding the legal import of the appeal does not justify withholding the appeal altogether under the factual representation that it did not "concern an incident on March 18, 2014"--not to mention, once again, that Plaintiff's claims also concerned denial of medical care after the incident.

On 5/14/2014, I had M.D. Line, and I was seen by P.A. "R. Wilson" who acted in deliberate indifference, denying adequate medical care for serious head injury (3/18/14).… On 3/18/14 Correctional Officer "Razo" of 4A, building 6 assaulted me in front of building 5. While in handcuff restraints, Razo threw me forcefully to ground where I prone out. Razo look at tower 5 Officer and said yelling, "hit the alarm!["] "Razo" then began kneeing me forcefully using deadly force to right rib cage area. "Razo" grabbed back of my head using deadly force, repeatedly slamming my right side face on concrete ground resulting in crushing skull, right side cheek bone fracture, right side eyebrow over one and half inch laceration requiring stiches. I also experience right eye vision damage. "Razo" did not stop striking my head repeatedly on the concrete until I was bleeding profusely from right right eyebrow laceration. Razo then yelled to the other correctional officers, "did anyone see?!" I have permanent right hearing damage. Awaiting hearing aid.

Most recently, I've been experiencing seizure symptoms, static vision, pulsating, loss coordination on 5/5/2014, 5/6/2014, 5/7/2014, 5/8/2014, 5/9/2014, 5/10/2014 due to serious head injury. I requested MRI and CT scan of head, Referral to neurologist which was denied.

(ECF No. 86-1, pgs. 5 & 7).

When appealing to the third level, Plaintiff wrote:

Beginning with M.D. Vu who deliberately denied sending me to outside hospital on date of injury 3/18/2014, while knowing serious head injury was sustain by repeated slamming of skull on

---

In their supplemental brief, Defendants also wrote that, "a court's introduction of documents at the hearing of a motion for summary judgment that were not included in the opposition papers is 'profoundly unfair to the movant . . . [because] the movant is then denied a fair opportunity to address the matter in the reply papers.' *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001)." (ECF No. 86, p. 3, n. 2) (alteration in original). However, the Court did not introduce this document. Plaintiff filed a copy of this appeal on the docket in response to Defendants' motion for summary judgment. (ECF No. 66, pgs. 15-18). It is true that Plaintiff's filing was technically improper in that it was filed personally rather than by Plaintiff's attorney. But the situation is not analogous to the Court independently introducing evidence and surprising a party at a hearing. Moreover, Defendants' own moving papers referenced this appeal (ECF No. 58-6, p. 3), indicating that Defendants were aware of its content. It was not unfair for the Court to consider an appeal cited by Defendants' papers and made available in full to the Court and all parties in connection with the motion prior to the hearing.

Although no request for sanctions is before this Court, the Court wishes to make very clear: Defendants statement that the appeal # 14036162 "did not concern the incident of March 18" was misleading about a material fact related to Defendants' motion. It appears that that the misrepresentation has been uncovered and the Court's Findings and Recommendation is based on the true facts. Nevertheless, the incident has given the Court reservations about trusting Defendants' fair presentation of evidence. The Court reminds counsel that it "[s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law." Cal. Rules Prof. Conduct, Rule 5-200(B).

concrete; and right rib cage was dislocated from being kneed by "Razo," and internal bleeding resulted; the R.N. Rice also tried to cover up the injuries by not reporting all injuries to M.D. Vu and waited over one and half hour of extensive bleeding from one and half inch laceration before notifying M.D. Vu for need of stiches; R.N. Rice also did not document cause or comment of injury on 7219 when I explained in detail how injuries were sustain by Razo's assault; R.N. Rice denied access to adequate medical care due to being pressured by Sgt. Ybarra not to document injuries; The R.N. "Gessel" also deliberately refused to clean dressing of stitch wound days later or notify supervisor of need for hospitalization due to serious head injury; Also, R.N. I. Guerra also deliberately refused to notify supervisor of need for hospitalization due to serious head injury, hearing loss, seizure type symptoms, concussion, internal bleeding days later; the M.D. Ki Kaihill deliberately refuse hospitalization knowing seriousness of multiple injuries. In result of their actions my injuries never healed, I have hearing loss right ear, requesting to see "E.N.T. specialist;" right side face paralyzed requesting to see []neurologist, []brain injury, concussion, T.B.I., requesting to see <u>concussion specialist</u>: I request punitive, nominal, and compensatory damages <u>unlimited</u>."

(<u>Id.</u> at 8).

In denying Plaintiff's appeal at the third level, J. Lewis (the Deputy Director of Policy and Risk Management Services) wrote that "[a]ll submitted information has been considered," that the "[a]ppeal is denied," and that "[t]his decision exhausts your administrative remedies." (<u>Id.</u> at 16-17).

## V. ANALYSIS

### A. Inmate Appeal (Log # 14-00637)

After review of the evidence, the Court recommends finding that the inmate appeal with Log Number 14-00637 sufficiently describes the alleged incident, and that all of Plaintiff's claims against defendants Johnson and Blankenship were exhausted by that appeal.

Defendants are correct that defendant Johnson and defendant Blankenship were not mentioned by name in this appeal. However, "[u]nder the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.' <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir.2010) (quoting <u>Griffin</u>, 557 F.3d at 1120). The grievance 'need not include legal terminology or legal theories,' because '[t]he primary purpose of a grievance is to

alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.' Griffin, 557 F.3d at 1120. The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.' Jones, 549 U.S. at 219, 127 S.Ct. 910 (citations omitted)." Reyes, 810 at 659.

Here, the grievance process alerted prison officials to the problem, i.e., the incident on March 18, 2014, when Plaintiff was allegedly assaulted by a prison guard. The claims against Johnson and Blankenship relate to their participation in, or failure to stop, that assault. Moreover, the appeal alerts the prison to the fact that officers other than Razo were present. This appeal mentioned that Razo yelled to the tower officer "hit the alarm!" Additionally, it mentioned Razo yelled "did anyone see?!" Allegations about a guard holding Plaintiff down and another witnessing the assault without intervening are sufficiently connected to the assault itself that they can be considered part of the "nature of the wrong" of the assault described in the appeal. To hold otherwise--that a Plaintiff cannot pursue claims against officers who he later learns held him down or failed to protect him in an assault situation--would unfairly shield correctional officers in these situations. After all, a victim of assault, especially under the circumstances alleged in the complaint, may not know who holds him down or fails to intervene.

It is also worth noting that the prison itself received "incident reports" from defendants Blankenship and Johnson following the alleged assault. (ECF No. 78). Although the Court is not bound by the prison's definition of "incident," it is relevant that the prison's own reports relating to the alleged Razo assault "incident" included Johnson and Blankenship's roles in the incident. (Id.). These reports suggest that the prison itself viewed the assault incident as encompassing those who witnessed and participated in Defendant Razo's actions against Plaintiff. Moreover, these reports demonstrate that prison officials were alerted to defendants Johnson and Blankenship's role in the events.

As to the retaliation claim against defendant Ybarra, it is based on the allegation that defendant Ybarra told all staff at the prison to retaliate against Plaintiff for filing an appeal related to the assault. In his action request for this appeal, Plaintiff requested that "all facility

staff counseled on []retaliation being considered 'staff misconduct'" because Plaintiff felt he was being subjected to retaliation. (ECF No. 58-5, p. at 6). Accordingly, Plaintiff exhausted his administrative remedies as to this claim as well.

### B. Health Care Appeal (Log # 14036162)

Plaintiff's deliberate indifference claim against defendant Ybarra is based on the allegation that, in order to cover up the assault, defendant Ybarra told medical staff not to document Plaintiff's injuries or send Plaintiff to a hospital for treatment. In the health care appeal with Log Number 14036162 (the appeal Defendants omitted and claimed was not relevant to the question of exhaustion of Plaintiff's claims), Plaintiff alleges in detail at the first level that he is being denied medical care. (ECF No. 86-1, pgs. 5 & 7) ("I am being subjected to deliberate indifference, malicious and sadistic intent, Eight[h] Amendment U.S. Constitution violation due to inadequate medical care for serious head injury(s) [sic]."). When Plaintiff appealed the first level response, Plaintiff alleged he still had not received sufficient medical care, giving more examples of the denial of medical care, including how one doctor "deliberately refused referral to see [a concussion specialist] while knowing seriousness of head injury condition," and asking "why am I being denied being seen by E.N.T. Specialist? 8th Amend. Violation U.S. Constitution." (Id. at 6 & 8). Then, in the response to the second level response, Plaintiff provided additional examples of how the prison "deliberately denied sending [Plaintiff] to outside hospital on date of injury 3/18/2014, while knowing serious head injury was sustain…," and specifically stating that he was being "denied access to adequate medical care due to being pressured by Sgt. Ybarra not to document injuries." (Id.). It is also worth noting that Plaintiff's description of the incident completely filled up the appeal form (he also wrote beyond the lined space provided).

Plaintiff's appeal alerted the prison to the nature of the wrong, i.e., that Plaintiff was being denied medical care. At the third level, Plaintiff specifically stated that defendant Ybarra was at least partially the cause of this denial of medical care. The appeal thus put the prison on notice that, according to Plaintiff, defendant Ybarra pressured a medical staff member not to document Plaintiff's injuries.

13

The question for the Court is whether the description is sufficient to exhaust Plaintiff's claim against defendant Ybarra in light of the fact that Ybarra's involvement was not raised by Plaintiff until the third level of review. At the third level, the Deputy Director of Policy and Risk Management Services wrote that "[a]ll submitted information has been considered," that the "[a]ppeal is denied," and that "[t]his decision exhausts your administrative remedies." (ECF No. 86-1, pgs. 16-17).

"[A] prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes, 810 F.3d at 658. As the decision rendered at the final level of review stated that all information was considered (which would include Plaintiff's allegations that he was denied medical care because of defendant Ybarra), and as a decision was rendered on the merits at the final level of review, the Court finds that Plaintiff exhausted his administrative remedies as to Plaintiff's claim against defendant Ybarra for deliberate indifference to Plaintiff's serious medical needs.

Additionally, the Court notes that the context of this appeal suggests that Plaintiff's delay in naming Ybarra was justified. Plaintiff alleges at the outset that he was denied medical care by many prison officers. Plaintiff later alleges he learned he was being denied health care because defendant Ybarra was instructing officers to deny care in order to cover up the incident. (ECF No. 87-1, p. 2). Plaintiff's additional detail in his appeal to the third level of review is consistent with Plaintiff's allegation that he learned about defendant Ybarra's role after initially being denied care. Moreover, defendant Ybarra's role is related to the issue raised in Plaintiff's initial appeal, i.e., that Plaintiff was improperly being denied medical care.

## VII. CONCLUSION AND RECOMMENDATIONS

For foregoing reasons, the Court finds that Plaintiff exhausted his administrative remedies as to all claims against Defendants.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 58) be DENIED because Plaintiff exhausted his available administrative remedies as to all claims against Defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within twenty-one (21) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 22, 2017**          /s/ _Erica P. Grosjean_

UNITED STATES MAGISTRATE JUDGE