UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MANUEL ANTONIO GONZALEZ,

    Plaintiff,

v.

J. RAZO, et al.,

    Defendants.

Case No. 1:15-cv-01098-DAD-EPG (PC)

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT, FULL PAYMENT TO ATTORNEY, AND/OR ALLOW PLAINTIFF WITHDRAW SETTLEMENT AND PROCEED WITH TRIAL BE DENIED

ORDER DENYING PLAINTIFF'S REQUEST TO FILE DISCOVERY

(ECF Nos. 149 & 158)

OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS

Manuel Gonzalez is a state prisoner, and is the plaintiff in this civil rights action filed pursuant to 42 U.S.C. § 1983, which includes state law claims. This case was closed on January 30, 2019 (ECF No. 145), based on a stipulation for voluntary dismissal with prejudice, which was filed on January 29, 2019 (ECF No. 144). Now before the Court is Plaintiff's *pro se* Motion to Enforce Settlement Agreement, Full Payment to Attorney, and/or to Allow Plaintiff to Withdraw Settlement and Proceed with Trial. (ECF No. 53).

///

///

## I. Plaintiff's Motion

Plaintiff alleges that on January 24, 2019, the parties agreed to settle the case for $16,500, with the settlement funds being paid directly to Plaintiff's counsel. After the settlement agreement was signed, defense counsel presented a new settlement agreement, which allowed deductions from the settlement amount for debts and liens, with the remaining amount to be sent to Plaintiff's counsel. Plaintiff did not sign this agreement.

Plaintiff also alleges that the R.J. Donovan Correctional Facility failed to comply with an order from the Superior Court of California, County of Los Angeles, which reduced his restitution to $5,000. This failure to comply is the reason Plaintiff requested that the full settlement amount be sent to his counsel. Plaintiff asks the Court to order R.J. Donovan Correctional Facility to comply with the order from the Superior Court of California.

Finally, Plaintiff alleges that the settlement payment has not yet been paid, and requests a telephonic conference to discuss the problem with the payment process.

## II. Defendants' Response

On March 21, 2019, Defendants filed a response. (ECF No. 154). Defendants allege that, under the terms of the settlement agreement, the payment was to be made to Plaintiff's inmate trust account. Defense counsel explained to Plaintiff's counsel that changing the payee to Plaintiff's counsel would require a new settlement agreement or an addendum. "Ultimately, the parties proceeded with the settlement agreement as written, and placed the material terms of the agreement on the record." (Id. at 2).

"After the settlement conference, defense counsel contacted Mr. Goff and offered to draft an addendum to the settlement agreement to direct the settlement funds to Mr. Goff's client trust account, rather than to Plaintiff's inmate trust account. Defense counsel and Mr. Goff both signed the addendum, but Plaintiff refused to sign." (Id.) (citations omitted).

"Plaintiff refused to sign the addendum because he claimed that his restitution balance was inaccurate." (Id.). "Defense counsel promptly investigated the issue, obtained a copy of the order, and forwarded it to the California Department of Corrections and Rehabilitation (CDCR) for its consideration." (Id.). Plaintiff's inmate trust account statement was updated to

reflect that the amount Plaintiff owed for restitution was an estimated amount of $4,454.56.

"Defendants do not oppose Plaintiff's motion insofar as Plaintiff moves to enforce the settlement agreement as written, including the provision whereby Plaintiff must pay his restitution balance (which has been updated)." (Id.).

"However, if Plaintiff would like the settlement funds to be directed to Mr. Goff's client trust account—which is contrary to the terms in the settlement agreement—then Defendants require that either: (A) the Court issue an order directing CDCR to pay the settlement funds to Mr. Goff; or (B) Plaintiff sign the addendum to the settlement agreement." (Id. at 3).[1]

## III. Plaintiff's Replies

On April 4, 2019, Plaintiff filed his reply. (ECF No. 156). On April 22, 2019, Plaintiff filed a supplemental reply. (ECF No. 158).

In his reply, Plaintiff alleges that, on March 12, 2019, in retaliation for filing this case, he was transferred to Kern Valley State Prison to attend a court proceeding. However, there was no court proceeding. Additionally, he was placed on an extremely violent prison yard.

Plaintiff also argues that the settlement amount was too low, and that the case should proceed to trial, or the settlement amount should be above $100,000 and include full coverage medical insurance for life. Plaintiff's family told him about the public average for settlements in similar cases, and the amount was significantly higher than what Plaintiff settled for. Additionally, Plaintiff was seen by a "Neuro Opthamologist" in February of 2019, and was told that he had nerve damage in his eyes caused by a head injury.

In his supplemental reply, Plaintiff alleges that Defendants violated the settlement agreement by presenting a modified settlement agreement. The original agreement was to send full payment to Plaintiff's attorney. This agreement was stipulated to on the record. However, Defendants did not do so. Instead, Defendants presented a modified agreement. Plaintiff argues that this violated the settlement agreement. As Defendants violated the settlement agreement, Plaintiff should be allowed to withdraw from the settlement agreement and proceed with trial.

---

[1] Defendants also ask for an extension of time to deliver the settlement funds. The Court notes that an extension has been granted. (ECF No. 160).

3

Plaintiff states that, due to retaliation he suffered, he "is no longer in agreement with the [settlement] agreement." (ECF No. 158, p. 5). Plaintiff alleges that, prior to the settlement conference date, he was transferred to Kern Valley State Prison. He was placed on a Level Four 180 prison yard, which was an extremely violent yard "specifically designed for inmates with 'A-1 Offenses,' consisting of 'multiple stabbings, murders, and attempted murders.'" (Id. at 7). The Level Four 180 housing classification was not Plaintiff's classification. Normally, when a prisoner is transported for court proceedings that prisoner is housed in Administrative Segregation on single cell status. The inappropriate housing "influenced plaintiff into accepting [the settlement] agreement on January 24, 2019 which he did not and would not agree under normal circumstances." (Id.).

Plaintiff alleges that there was a second occurrence of retaliation when Plaintiff went out to court on March 12, 2019. He once again arrived at Kern Valley State Prison and was immediately housed on an extremely violent prison yard. The "transfer was for no reason other than retaliation, as Plaintiff never was taken to Court…." (Id. at 8).

Instead of asking that the settlement agreement be enforced, Plaintiff requests the "Court to specifically allow Plaintiff [to] withdraw [the settlement] and proceed with trial." (Id. at 9).

Finally, Plaintiff requests additional time to "file discovery." (Id. at 12).

## IV. Legal Standards

Once a party enters into a binding settlement agreement, that party cannot unliterally decide to back out of the agreement. See, e.g., Doi v. Halekulani Corporation, 276 F.3d 1131, 1131 (9th Cir. 2002); Spitzer v. Aljoe, 734 F. App'x 457 (9th Cir. 2018); Gastile v. Virga, 2015 WL 13065433, at *2 (E.D. Cal. Feb. 10, 2015), report and recommendation adopted, 2015 WL 13065220 (E.D. Cal. June 10, 2015), aff'd, 670 F. App'x 526 (9th Cir. 2016). "At a time where the resources of the federal judiciary… are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits [him]. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite

litigation." Doi, 276 F.3d at 1141.

However, under California law, a party can rescind a contract if his consent "was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." Cal. Civ. Code § 1689.

"One seeking rescission on account of fraud must be actually deceived by misrepresentation of a *material fact* and the other party must have intended to deceive by a misrepresentation of such *material fact*. Further, the party seeking to rescind must rely upon the fraudulent representation to his injury and damage before he can have the contract rescinded." Contra Costa Cty. Title Co. v. Waloff, 184 Cal. App. 2d 59, 65 (Ct. App. 1960) (emphasis added). See also Dyke v. Zaiser, 80 Cal. App. 2d 639, 650 (1947) ("If one *material* statement be false it is sufficient ground for rescission.") (emphasis added).

Under Federal Rule of Civil Procedure 60(b)(6), the district court is permitted to relieve Plaintiff "from a final judgment, order, or proceeding for . . .any . . . reason that justifies relief." "Generally, only 'extraordinary circumstances' justify relief under the rule." Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162, 937 F.2d 408, 410 (9th Cir. 1991) (quoting United States v. Sparks, 685 F.2d 1128, 1129 (9th Cir.1982)). "Repudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance, and it justifies vacating the court's prior dismissal order." Keeling, 937 F.2d at 410.

**V. Analysis**

To begin, in Plaintiff's reply, Plaintiff stated that he is "no longer in agreement with the [settlement] agreement" and that he wishes to proceed to trial. Accordingly, it appears that Plaintiff no longer wants the settlement agreement to be enforced, and the Court will treat this request as withdrawn. The Court will recommend that the remainder of Plaintiff's requests be denied.

The Court finds that Plaintiff's request for the Court to order R.J. Donovan Correctional Facility to comply with the order from the Superior Court of California should be

denied, because, according to Defendants' uncontroverted response, R.J. Donovan Correctional Facility is now in compliance with the Superior Court's order.

The Court also finds that Plaintiff's request to be allowed to withdraw from the settlement agreement should be denied. Plaintiff has not sufficiently alleged facts that establish he gave his consent through "duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." Cal. Civ. Code § 1689. Plaintiff alleges that he agreed to settle his case because he was placed on a dangerous yard due to the fact that he was prosecuting his case. While not explicitly stated, Plaintiff appears to argue that this amounted to duress or menace.

However, the entire process of settlement shows that the first alleged instance of retaliation was not what caused Plaintiff to give his consent to the settlement agreement. Plaintiff attended a formal settlement conference with Magistrate Judge Jennifer L. Thurston and his attorney. The parties engaged in a full discussion with the assistance of the Magistrate Judge. There is no indication that Plaintiff told his attorney or Judge Thurston about the alleged retaliation. In fact, Plaintiff's motion, which he filed after the settlement agreement, asks, in part, for the settlement agreement to be enforced. Notably, the motion does not allege any retaliation. It was not until he filed his reply that he first began alleging retaliation.

Moreover, there are no facts alleged that suggest that Plaintiff was placed in the allegedly dangerous yard to influence the settlement discussions in this case. Thus, Plaintiff has failed to sufficiently allege facts that establish he gave his consent through duress, menace, fraud, or undue influence.

As to the second alleged instance of a retaliatory yard placement, Plaintiff alleged no facts suggesting that the placement occurred because Plaintiff was prosecuting this case. Moreover, even if Plaintiff was placed in a dangerous yard due to the fact that he prosecuted this case, this does not support Plaintiff's attempt to withdraw from the agreement. The second alleged retaliatory yard placement occurred after the settlement agreement was signed.

///

Plaintiff's treatment by non-defendant prison officials[2] after Plaintiff signed the settlement agreement does not provide a legal basis to withdraw from the settlement agreement with Defendants. If Plaintiff believes that he suffered retaliation after settling his case, it is possible Plaintiff could file a grievance or a separate lawsuit based on this conduct.[3]

The Court next turns to Plaintiff's assertion that Defendants violated the settlement agreement because they refused to provide the settlement funds to Plaintiff's attorney. Defendants provided the Court with a copy of the signed settlement agreement. (ECF No. 154-1, pgs. 10-13). Plaintiff does not dispute that this is a true and correct copy of the agreement. The settlement agreement does not state that Defendants must provide the settlement funds to Plaintiff's attorney. In fact, the settlement agreement requires the funds to be paid into Plaintiff's inmate trust account. (Id. at 10). Additionally, there is no indication in the transcript of the settlement proceedings that Defendants agreed to provide the settlement funds to Plaintiff's attorney. (See ECF No. 153). Accordingly, Defendants did not violate the settlement agreement by refusing to provide the settlement funds to Plaintiff's attorney.[4]

As to Plaintiff's allegation that he settled his case for too little, this is not a reason to allow Plaintiff to unilaterally back out of a settlement agreement that he entered into on the record at a settlement conference, and signed.

Moreover, the follow exchange occurred on the record:

> THE COURT: And you understand that if, for example, you go back and in, say, a week or so, you discover a fact that you think would change everything, that it would mean that slam-dunk, you're going to win this case – you have an impeachable witness, maybe it's the warden, who turns out is going to testify on your behalf -- that with the settlement today, you would not be able to come back and set the settlement aside. Do you understand that?
>
> MR. GONZALEZ: Yes, your Honor.

---

[2] There is no indication in Plaintiff's allegations that Defendants were responsible for the retaliation.
[3] The Court is not taking any position on the merits of such a suit.
[4] Defendants ask for clarification regarding "the proper destination for Plaintiff's settlement funds." (ECF No. 159, p. 2). If these findings and recommendations are adopted, the funds should be paid in accordance with the signed settlement agreement, i.e., to Plaintiff's inmate trust account.

> THE COURT: Do you also understand that if it turns out that you later discover an injury that is different than the ones that you know of today, that again, that would not be a reason to either set aside the settlement or to file a new litigation. Do you understand that as well?
>
> MR. GONZALEZ: Yes, your Honor.
>
> THE COURT: And what Mr. Whisnand described also is if it turns out that you discover that the situation is different than you understand it today, either because you learn something else or you find out that you could have filed another claim that you didn't, that you would not be able to set aside the settlement or to institute new litigation if it came from the same incident. Do you understand that?
>
> MR. GONZALEZ: Yes, your Honor.

(ECF No. 153, Transcript of Settlement Conference Proceedings, 4:4-5:4). Thus, Plaintiff was explicitly warned that he could not back out of the settlement agreement because of newly discovered information.

Accordingly, based on the foregoing, Plaintiff has not established extraordinary circumstances justifying relief from the Court's order closing the case pursuant to the stipulation of voluntary dismissal.

## VI. Recommendation and Order

Accordingly, for the reasons detailed herein, IT IS HEREBY RECOMMENDED that Plaintiff's Motion to Enforce Settlement Agreement, Full Payment to Attorney, and/or to Allow Plaintiff to Withdraw Settlement and Proceed with Trial (ECF No. 149) be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan,

923 F.2d 1391, 1394 (9th Cir. 1991)).

As the Court is recommending that Plaintiff not be allowed to withdraw from the settlement agreement, IT IS ORDERED that Plaintiff's request to "file discovery" (ECF No. 158, p. 12) is DENIED.

IT IS SO ORDERED.

Dated: **August 28, 2019**

/s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE